IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 22-CR-00188-WJ

SHILO OLDROCK,

    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant Shilo Oldrock, by and through his counsel of record, Assistant Federal Public Defender Buck Glanz, respectfully files the following Sentencing Memorandum and requests that the Court consider imposition of a sentence of twenty-years incarceration in the Bureau of Prisons. Such sentence would be "sufficient, but not greater than necessary" to achieve the statutory purposes for sentencing.

## PROCEDURAL BACKGROUND

On August 14, 2023, Mr. Oldrock entered a guilty plea pursuant to a Rule 11(c)(1)(C) plea agreement to one count of 18 U.S.C. §§ 1111 and 1153, that being second degree murder and one count of 18 U.S.C. 1111, that being voluntary manslaughter. (Doc. 43). The Presentence Investigation Report (PSR) (Doc. 47) calculated a guideline imprisonment range of 210 to 262 months. (PSR ¶ 107). Mr. Oldrock asks this court, in consideration of the 18 U.S.C. § 3553(a) factors, to consider a sentence near the middle of the guidelines, twenty-years (240 months).

1

## **ARGUMENT**

A court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koons v. United States,* 518 U.S. 81, 113 (1996). The established tradition of sentencing in federal courts is that "the punishment should fit the offender and not merely the crime." *Pepper v. United States,* 562 U.S. 476, 487-88 (2011) (internal citations omitted). A sentencing court should "engage in a holistic inquiry of the § 3553(a) factors." *United States v. Barnes,* 890 F.3d 910, 916 (10th Cir. 2018) (citations omitted). Mr. Oldrock asks this court to consider a guideline sentence based on the 18 U.S.C. § 3553(a) sentencing factors.

A. <u>Nature and Circumstances of the Offense & Mr. Oldrock's History and Characteristics</u>

Mr. Oldrock grew up in South Dakota. His father was very abusive to him. From ages 11 to 14 he suffered constant mental and physical abuse. He also was sexually abused. These events have had a very traumatic effect on Mr. Oldrock. He self-medicates with alcohol, marijuana, and methamphetamine. He has struggled to achieve basic societal goals such as finding gainful employment, housing, and economic stability. Currently Mr. Oldrock's father is serving a federal prison sentence. He is scheduled to be released in 2050.

In early 2021, Mr. Oldrock was at his uncle's house drinking with both victims in this case. John Doe 1, Erwin Beach, was Mr. Oldrock's uncle. At one point, John Doe 2, Philbert Shorty, and Mr. Beach started fighting. Mr. Oldrock was not surprised by this. In his tribe, it is common for men to fight when they drink. The fights are usually short and afterwards the men

return to drinking. Thinking this would be the case, Mr. Oldrock went into the bathroom to smoke methamphetamine.

When he came out of the bathroom, Mr. Shorty was on the floor and Mr. Beach was beating him severely. Then Mr. Beach dragged Mr. Shorty into the bedroom. Mr. Shorty was laying on the ground extremely injured and convulsing. In shock, Mr. Oldrock felt that he had to put Mr. Shorty out of his misery. He grabbed an iron bar and ran into the room and hit Mr. Shorty in the head with it possibly causing, or accelerating, his death. Mr. Beach then grabbed a saw and started cutting the body up. Horrified, Mr. Oldrock tried to leave. His uncle stopped him and said, you are part of this now and you are going to help me. He further said that if anyone found out about Shorty's death, he would know Mr. Oldrock was the source. He told Mr. Oldrock he would put him in the burn barrel. Then Mr. Beach continued cutting up the body and he made Mr. Oldrock help him put it in the burn barrel in the yard. This experience profoundly affected Mr. Oldrock.

In the months after Mr. Shorty's death, Mr. Oldrock lived in continuous fear of his uncle. He was afraid that his uncle would kill him and burn his body in the barrel. He was afraid for his family as well. Mr. Oldrock's children live in Navajo, New Mexico. The same town where Mr. Beach lived. During this period, Mr. Beach told Mr. Oldrock, "I've been putting people in the ground since you were in diapers."[1] He believed it was only a matter of time before he shared Mr. Shorty's fate. Mr. At first, he tried avoiding Mr. Beach but that proved impossible. Mr. Oldrock was homeless and reliant on others for places to stay. His uncle's house was one of the few places he could count on for a warm place to stay. Ultimately that led him to stay at Mr. Beach's house in October 2021.

---

[1] It should be noted, the FBI discovered burned remnants of a 3rd unidentified individual in the barrel on Mr. Beach's property.

The day Mr. Beach died, he and Mr. Oldrock were drinking heavily. They started arguing and it escalated quickly. Mr. Beach picked up an axe and told Mr. Oldrock he was going to kill him. Mr. Oldrock charged at Mr. Beach and ducked under the axe. He stabbed Mr. Beach repeatedly and eventually cut off his head. Mr. Oldrock did this because he believed it was his only option. He had to kill Mr. Beach or Mr. Beach would kill him.

After Mr. Beach's death, Mr. Oldrock got a ride to the flea market in Gallup from L.S. He told L.S. that he had killed Mr. Beach. Shortly thereafter, he was arrested by the FBI. He waived his Fifth Amendment rights and gave a full confession to the FBI. He admitted to killing Mr. Beach and described his role in Mr. Shorty's death. He described in detail his deep fear of Mr. Beach. He explained how he had lived in a constant state of fears the last few months thinking about ending up in that burn barrel.

Mr. Oldrock also believes it is likely that Mr. Beach killed his grandmother, Mary Beach. Ms. Beach lived with Mr. Beach until her death. Undersigned counsel obtained the OMI report. She died in Mr. Beach's house. The cause of death was blunt force trauma. The manner of death was undetermined. Ms. Beach died in December 2020.

B. <u>A Sentence in the Guideline Range in Custody Accomplishes the Goals of Sentencing.</u>

The task before the Court at sentencing is to impose a sentence that is sufficient but not greater than necessary to accomplish the goals of punishment. A sentence is sufficient, but not greater than necessary, if it (a) reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; (b) affords adequate deterrence to criminal conduct; (c) protects the public from further crimes of the defendant, and (d) provides the defendant with needed education or vocational training and medical care.  *See* 18 U.S.C. § 3553(a)(2).

1. *A sentence within the guideline range reflects the seriousness of the offense, promotes respect for the law, and will adequately deter criminal conduct.*

4

This sentence will be the longest Mr. Oldrock has ever served. If the Court were to grant his request and sentence him to twenty-years he would likely be released around the age of forty-five. He would have served more than a third of his adult life in custody for this offense. A sentence of twenty-years is in the middle of the guideline range. Mr. Oldrock has already shown his respect for the law by confessing his crimes to the FBI. He has further shown his respect for the law by entering a guilty plea. He knows that there are consequences for his actions and a lengthy period of incarceration is necessary. He never considered going to trial on this matter. He has been focused on taking responsibility since the first time undersigned counsel met him.

It is tempting to look at the facts of Mr. Oldrock's case and believe a longer sentence is warranted. However, Mr. Oldrock did not plan to kill Mr. Shorty or Mr. Beach. He became swept up in the events that led him to be the Court in this case through his familial ties to Mr. Beach. He did not plan to kill Mr. Shorty. He was high on methamphetamine and intoxicated from alcohol. When he saw Mr. Beach beat Mr. Shorty nearly to death his intention was to put him out of his misery. Although this is not a legal defense, it certainly is a factor worthy of consideration because it distinguishes him from defendants who commit murder for other reasons.

A sentence of twenty-years will also avoid unwarranted disparities among similarly situated defendants. According to the PSR, in the last five years, the average sentence for defendants like Mr. Oldrock was 235 months. (PSR ¶ 128). Mr. Oldrock's requested sentence of twenty-years is slightly above average yet still in the guideline range. It is a sentence that does not create unwarranted disparities. For these reasons, a sentence of twenty-years is appropriate.

2. *A twenty-year sentence will provide just punishment for the offense and adequately protect the public.*

A sentence of twenty-years provides is sufficient punishment and protects the public. As argued above, a twenty-year sentence is consistent with the sentences given to individuals committing the same offense with the same criminal history score. This shows that this length of the sentence is a just punishment.

3. *A guideline sentence will provide Mr. Oldrock with educational and vocational training and will best facilitate his rehabilitation.*

Mr. Oldrock is a damaged human being. He has led a very difficult life. He needs counseling, education, and basic life skills. There are numerous opportunities to begin the process of rehabilitation in the Bureau of Prisons. The First Step Act created numerous new programs to reduce recidivism. While it is unlikely that Mr. Oldrock will be eligible for any sentence reduction given the nature of the offense, he can still avail him himself of those programs to provide himself with running start upon his release. After the pretrial interview, undersigned counsel discussed the RDAP program again with Mr. Oldrock. He has decided he would like to participate in the program. He requests the Court recommend it as part of his sentence. He also requests that the Court recommend that the Bureau of Prisons consider FCI Terra Haute as a potential facility.

Once he is released, US probation can assist him with transitioning back into society and obtaining gainful employment. If he takes advantages of all the tools available to a probationer, it is likely that Mr. Oldrock can avoid finding himself in the criminal justice system in the future. It is possible he can become a positive part of his children's lives and a productive member of society. If Mr. Oldrock makes good choices going forward, he will likely never again find himself incarcerated and facing a lengthy custodial sentence. A sentence of supervised release after incarceration is the best way to facilitate his rehabilitation.

## **CONCLUSION**

Considering the sentencing factors set forth in 18 U.S.C 3553(a) a sentence of twenty-years will achieve the statutory purposes of sentencing. For all the reasons set forth above, Mr. Oldrock humbly requests the court consider imposing this sentence.

                Respectfully Submitted,

                    **FEDERAL PUBLIC DEFENDER**
                    111 Lomas NW, Suite 501
                    Albuquerque, NM 87102
                    (505) 346-2489
                    buck_glanz@fd.org

                    *Electronically filed November 21, 2023*
                    /s/ Buck Glanz
                    Assistant Federal Public Defender
                    Attorney for Defendant